MCCORMICK BARSTOW LLP
Shane G. Smith, #272630
*shane.smith@mccormickbarstow.com*
Melissa K. Cerro, #304268
*melissa.cerro@mccormickbarstow.com*
7647 N. Fresno Street
Fresno, CA 93720
Tel.: (559) 433-1300
Fax: (559) 433-2300

IRWIN IP LLP
Jason Keener (*pro hac vice* forthcoming)
*jkeener@irwinip.com*
Joseph F. Marinelli (*pro hac vice* forthcoming)
*jmarinelli@irwinip.com*
150 N. Wacker Dr., Suite 700
Chicago, IL 60606
Tel.: (312) 667-6080

*Attorneys for Defendant/Movant*

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

|  |  |
|---|---|
| *In re MOTION TO ENFORCE THIRD PARTIES FORWARD MOTION PICTURES AND VIRTUAL ACTIVE'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS*,<br><br>Respondents,<br><br>In the matter of<br>NEXTPULSE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LIFE FITNESS, LLC,<br><br>Defendant. | Case No.:<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LIFE FITNESS'S MOTION TO ENFORCE THIRD PARTIES FORWARD MOTION PICTURES' AND VIRTUAL ACTIVE'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS**<br><br>Underlying Litigation: *Nextpulse, LLC* v. *Life Fitness, LLC*, No. 1:22-cv-3239, N.D. Ill<br><br>HEARING: To Be Assigned |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   PARTIES AND JURISDICTIONAL STATEMENT ...................................... 1

III.  FACTUAL BACKGROUND ......................................................................... 2

IV.   SUMMARY OF MEET AND CONFER EFFORTS ...................................... 4

V.    ARGUMENT ................................................................................................. 5

    A.  Respondents are Improperly Withholding Documents Based on "Privacy" and "Trade Secret" Privileges or Objections. .......................................... 5

      1.  Federal privilege law does not recognize Respondents' alleged trade secret and privacy "privileges." .................................................. 6

      2.  Respondents have not met their burden required to withhold documents based on trade secret protection ............................................. 7

      3.  Respondents have not met their burden required to withhold documents based on privacy. ......................................................... 9

      4.  The Confidentiality Order in this case adequately protects Respondents' confidentiality concerns ......................................... 12

      5.  Respondents are free to redact non-responsive information ....................... 13

    B.  Respondents Cannot Withhold Communications, Documents, and Attachments with Nextpulse Relating to the Assignment of the Asserted Copyrights Under the Common Interest Doctrine Because They Are Not in Furtherance of a Common Legal Strategy. ......................................... 14

    C.  Documents Relating to the Date the FMP/VA Copyright Assignment Agreement Was Signed Are Not Privileged. ......................................... 17

    D.  Respondents Cannot Withhold Email Attachments Merely Because They Are Associated with a Privileged Email. ...................................... 19

    E.  Life Fitness Does Not Oppose Transferring this Motion to NDIL. ........................... 20

VI.   CONCLUSION ........................................................................................... 21

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Woodford*,
No. CV-F-05-1104 OWW LJO, 2007 WL 309945 (E.D. Cal. Jan. 30, 2007), *modified on
reconsideration*, 2007 WL 9747771 (E.D. Cal. Mar. 16, 2007) ............................................. 10

*AT&T Corp. v. Microsoft Corp.*,
No. 02-0164 MHP (JL), 2003 WL 21212614 (N.D. Cal. Apr. 18, 2003) ................................. 19

*Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*,
No. 07-cv-90, 2007 WL 4357672 (S.D. Cal. Dec. 11, 2007) ...................................................... 7

*Christian v. Cnty. of Los Angeles*,
No. 2:18-cv-05792, 2020 WL 4820006 (C.D. Cal. Jan. 28, 2020) ............................................. 9

*Enzo APA & Son, Inc. v. Geopag A.G.*,
134 F.3d 1090 (Fed. Cir. 1998) ............................................................................................... 18

*For Your Ease Only, Inc. v. Calgon Carbon Corp.*,
No. 02 C 7345, 2003 WL 21920244 (N.D. Ill. Aug. 12, 2003) ................................................ 15

*Garcia v. Cnty. of Stanislaus*,
No. 1:21-cv-00331-JLT-SAB, 2022 WL 4237960 (E.D. Cal. 2022) ......................................... 20

*Hardie v. Nat'l Collegiate Athletic Ass'n*,
No. 13-cv-346, 2013 WL 6121885 (S.D. Cal. Nov. 20, 2013) ................................................... 6

*Harris v. United States*,
413 F.2d 316 (9th Cir. 1969) ................................................................................................... 18

*HyperQuest Inc. v. N'Site Solutions, Inc.*,
632 F.3d 377 (7th Cir. 2011) ................................................................................................... 18

*In re New Century*,
No. CV 07-0931 DDP (FMOx), 2009 WL 10691336 (C.D. Cal. Dec. 7, 2009) ....................... 20

*In re Pac Pictures Corp. v. Dist. Court*,
679 F.3d 1121 (9th Cir. 2012) ................................................................................................. 15

*Kemper Independence Ins. Co. v. Wells*,
No. 1:17-cv-01612-AWI-SAB, 2018 WL 558791 (E.D. Cal. Jan. 25, 2018) ........................... 13

ii

*L.G. Philips LCD Co. v. Tatung Co.*,
No. F-07-0009, 2007 WL 869700 (E.D. Cal. Mar. 21, 2007) ..................................... 7

*Lee v. Glob. Tel\*Link Corp.*,
No. 15-cv-2495, 2017 WL 10575166 (C.D. Cal. Sept. 6, 2017) ................................ 6

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
No. 14-cv-3103, 2016 WL 11783857 (D. Minn. Mar. 29, 2016) .............................. 15

*Mashiri v. Ocwen Loan Servicing, LLC*,
No. 12-cv-2838, 2014 WL 4608718 (S.D. Cal. Sept. 15, 2014)................................ 13

*Microsource, LLC v. Eco World Group*, LLC,
587 F. Supp. 3d 770 (N.D. Iowa 2022) .................................................................... 9

*Nidec Corp. v. Victor Co. of Japan*,
249 F.R.D. 575 (N.D. Cal. 2007)............................................................................. 16

*O'Connor v. Boeing North American, Inc.*,
185 F.R.D. 272 (C.D. Cal. 1999) ............................................................................ 19

*Pennell v. Glogal Trust Management, LLC*,
990 F.3d 1041 (7th Cir. 2021) ................................................................................ 18

*Pollack v. U.S. Dep't of Just.*, 577 F.3d 736 (7th Cir. 2009)................................... 18

*RG Abrams Ins. v. Law Offs. of C.R. Abrams*,
No. 2:21-cv-00194, 2022 WL 422824 (C.D. Cal. Jan. 19, 2022).........................6, 10

*RG Abrams Ins. v. Law Offs. of C.R. Abrams*,
No. 221-cv-00194, 2021 WL 10312432 (C.D. Cal. Nov. 5, 2021).........................9, 10

*Synopsys, Inc. v. Ricoh Co.*,
No. C-03-2289 MJJ, 2006 WL 2479109 (N.D. Cal. Aug. 28, 2006)......................... 16

*United States v. Bergonzi*,
216 F.R.D. 487 (N.D. Cal. 2003)............................................................................. 15

*United States v. Salyer*,
853 F. Supp. 2d 1014 (E.D. Cal. 2012) ................................................................... 19

*United States v. Zolin*,
491 U.S. 554 (1989) .................................................................................................. 6

iii

*Upjohn Co. v. Hygieia Biological Laboratories*,
151 F.R.D. 355 (E.D. Cal. 1993) ................................................................. 7

**Statutes**

18 U.S.C. § 1839(3) ................................................................................... 7

**Rules**

E.D. Cal. L.R. 120(d) ............................................................................... 2

E.D. Cal. L.R. 140 ................................................................................... 13

E.D. Cal. L.R. 251 ................................................................................... 1

Fed. R. Civ. P. 26(a)(1) ........................................................................... 9

Fed. R. Civ. P. 26(c)(1)(G) ..................................................................... 13

Fed. R. Civ. P. 37 ................................................................................... 1

Fed. R. Civ. P. 45 ................................................................................... 1

Fed. R. Civ. P. 45(f) ............................................................................... 20

N.D. Ill. L.R. 5.8 .................................................................................... 12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LIFE FITNESS'S MOTION TO
ENFORCE THIRD PARTIES FORWARD MOTION PICTURES' AND VIRTUAL ACTIVE'S COMPLIANCE
WITH SUBPOENA FOR DOCUMENTS

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 37 and Local Rule 251, Defendant Life Fitness, LLC ("Life Fitness") hereby moves this Court to compel third parties Forward Motion Pictures LLC ("FMP") and Virtual Active, Inc. ("VA") (collectively "Respondents") to comply with subpoenas for the production of documents ("Motion").  Pursuant to Local Rule 251 and Fed. R. Civ. P. 37, the parties telephonically met and conferred in good faith on September 25, 2024, September 30, 2024, and October 9, 2024, but were unable to resolve the disputes raised in this Motion.

## II.    PARTIES AND JURISDICTIONAL STATEMENT

Life Fitness is a Delaware limited liability company with its principal place of business located at 10601 Belmont Ave Franklin Park, Illinois, 60131.

Respondent FMP is a Delaware limited liability company.  Respondent VA is a California corporation.  Both FMP and VA have principal places of business at 2108 N. St., Ste. C, Sacramento, California, 95816, and a registered agent located at the same address. Declaration of Joseph Marinelli ("Marinelli Decl.") at ¶ 25, Ex. 16.[1]

On July 17, 2024, Life Fitness served subpoenas for documents and depositions on FMP and VA (the "Subpoenas") pursuant to Federal Rule of Civil Procedure 45.  *Id*. at ¶¶ 4–5, Exs. 1–2.  Life Fitness's Subpoenas were issued from the Northern District of Illinois, which is where the underlying litigation, *Nextpulse, LLC v. Life Fitness, LLC*, No. 1:22-cv-3239 (N.D. Ill. Mar. 31, 2024) (the "NDIL Action"), is pending.  *Id*.  The Subpoenas provided a location in Sacramento, California, for compliance with document production requests.  *Id*.

On August 26, 2024, Respondents VA and FMP served responses and objections to the Subpoenas.  *Id*. at ¶¶ 6–7, Exs. 3–4.  Although Respondents produced some documents via email, Respondents objected to producing the documents addressed in this Motion.

---

[1] Exhibit 12 to the Marinelli Declaration contain confidential information.  Life Fitness is concurrently filing a Notice of Request to Seal with respect to that exhibit.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LIFE FITNESS'S MOTION TO ENFORCE THIRD PARTIES FORWARD MOTION PICTURES' AND
VIRTUAL ACTIVE'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

Rule 45(d)(2)(B)(i) provides that if an objection is made to a subpoena to produce documents, "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."

This Court holds jurisdiction over the parties and this Motion pursuant to Rule 45(d)(2)(B)(i) because Respondents' principal place of business is located in this District and therefore Respondents' compliance with the Subpoenas is required in this District.  Moreover, venue is properly set in the Sacramento Division of this Court pursuant to Local Rule 120(d).

## III.    FACTUAL BACKGROUND

On June 21, 2022, Life Fitness was sued by Nextpulse, LLC ("Nextpulse") in the NDIL Action.  Marinelli Decl. at ¶ 26.  Nextpulse accuses Life Fitness of copyright infringement and trade secret misappropriation.  *Id.* at ¶ 30, Ex. 17.  Almost all of the copyrights that Nextpulse asserts in the NDIL Action purport to cover virtual biking, running, and hiking video content used on treadmills and other cardiovascular equipment ("VA Videos").  *Id.*, Ex. 17 at Ex. B.  The VA Videos were purportedly created by Respondent VA or by Nextpulse's predecessor, Netpulse, Inc. ("Netpulse"), after Netpulse acquired VA.[2]  *Id.*, Ex. 17 at ¶¶10, 12, 46.

On February 28, 2019, Nextpulse and VA entered into a Stock Purchase and Sale Agreement ("SPSA") with Respondent FMP.  *Id.* at ¶ 17, Ex. 11.  According to the SPSA, both Nextpulse and VA assigned all right, title, and interest in Nextpulse's and VA's copyrights to FMP, including the VA Videos and copyrights that Nextpulse is asserting against Life Fitness.  *Id.*  Thus, following the SPSA, all copyrights related to the VA Videos were owned by FMP, not Nextpulse or VA.  *Id.*

After Nextpulse filed suit, Life Fitness filed a motion to dismiss on August 12, 2022, seeking among other things, dismissal of Nextpulse's copyright claims for lack of standing based on FMP's ownership of the VA Video copyrights.  *Id.* at ¶ 27.  Nextpulse responded by

---

[2] On May 4, 2018, Netpulse merged into Nextpulse as part of a tax reorganization. *Id.* at ¶ 30, Ex. 17 at ¶ 29.

2

filing an amended complaint that had a vague allegation that sometime in 2022 VA and FMP transferred the VA Video copyrights back to Nextpulse.  *Id.* at ¶ 28.

On September 30, 2022, Life Fitness filed a motion to dismiss the amended complaint, again seeking dismissal of Nextpulse's copyright claims for lack of standing.  *Id*. at ¶ 29.  On November 4, 2022, Nextpulse responded to Life Fitness's motion to dismiss attaching a 2022 agreement ("FMP/VA Copyright Assignment Agreement") in which FMP and VA purported to assign the VA Videos back to Nextpulse.  *Id.* at ¶ 18, Ex. 12.  The FMP/VA Copyright Assignment Agreement has an alleged "effective date" of June 9, 2022 (prior to the filing of the complaint), but there is no evidence that the FMP/VA Copyright Assignment Agreement was actually executed on that date.  *Id.*  Indeed, based on documents that Respondents did produce in response to the subpoena, it appears that the FMP/VA Copyright Assignment Agreement was actually executed months after the complaint was filed, likely sometime in August, September or as late as November 2022, and was thus an invalid *nunc pro tunc* assignment that cannot cure the standing defect.  *Id*. at ¶ 15.

According to its complaint, Nextpulse alleges that the copyright infringement began when Life Fitness was sold by Brunswick Corp. to Lumos in June 2019.  *Id*. at ¶ 30, Ex. 17 at 34–38.  Thus, it appears that since the infringement was alleged to begin up until the date the complaint was filed, the copyrights to the VA Videos were at all times owned by FMP.  Instead of suing Life Fitness directly for infringement, FMP assigned ownership of the copyrights to Nextpulse, reserving the right to reacquire the copyrights after the NDIL Action is resolved, and acquiring a right to a portion of any recovery Nextpulse obtains from the NDIL Action.  *Id*. at ¶ 18, Ex. 12.

On July 17, 2024, Life Fitness served the Subpoenas pursuant to Fed. R. Civ. P. 45 on each of the Respondents requesting documents relevant to the NDIL Action, including documents relating to Nextpulse's sale of VA to FMP, VA's and Nextpulse's assignment of copyrights to FMP, and the timing and negotiations of the purported assignments of copyrights from VA and FMP back to Nextpulse.  *Id*. at ¶¶ 4–5, Ex. 1–2.  The Subpoenas also sought license agreements

3

and negotiations related to such agreements relating to the asserted copyrights, which FMP owned for several years before assigning them back to Nextpulse after Nextpulse filed the NDIL Action. *Id*. at ¶¶ 4–5, Exs. 1–2 at Ex. B.  Additionally, Life Fitness's Subpoenas sought deposition testimony from VA and FMP, but Life Fitness is unable to proceed until all document production issues are resolved.  *Id*.  Fact discovery in the above-captioned matter is scheduled to close on April 3, 2025. *Id*. at ¶ 31, Ex. 18.

## IV.    SUMMARY OF MEET AND CONFER EFFORTS

On August 26, 2024, Respondents served objections to the Subpoena and produced 4,985 documents on behalf of Respondents along with a privilege log that contained over 2,250 entries. *Id*. at ¶¶ 6–8, Exs. 3–4.

On August 30, 2024, Life Fitness sent a letter to counsel for Respondents identifying alleged deficiencies in Respondents' general and specific objections to the document requests contained in the Subpoena, and to Respondents' claims of privilege contained in their privilege log. *Id.* at ¶ 19, Ex. 13.  On September 17, 2024, counsel for Life Fitness and counsel for Respondents held a first meet and confer to discuss Life Fitness's August 30 letter. *Id.* at ¶ 20. On September 25, 2024, Life Fitness sent another letter identifying alleged deficiencies in Respondents' document production. *Id*. at ¶ 21, Ex. 14.  On September 30, 2024, Life Fitness' counsel and Respondents' counsel met and conferred again regarding Respondents' inadequate document production and deficient privilege log. *Id.* at ¶ 22.  On October 9, 2024, counsel for Life Fitness and counsel for Respondents met and conferred for a third time. *Id.* at ¶ 23.  Although counsel for Life Fitness and Respondents resolved some of the issues raised in Life Fitness's letters and discussed during the three meet and confers, certain disputes remained unresolved.  Thus, the parties are at an impasse on those issues. *Id*. at ¶ 24, Ex. 15.

On November 18, 2024, Respondents provided a supplemental privilege log and stated that Respondents had provided their final responses to Life Fitness' previously propounded document requests. *Id*.

On November 20, 2024, Respondents produced another supplemental privilege log. *Id.* at ¶ 9, Ex. 5. The supplemental privilege log resolved some of the disputes that the parties met and conferred about, but the supplemental log did not address any of the issues raised in this Motion, and Respondents indicated in the previous meet and confers that they were unwilling to withdraw the disputed privilege claims. For example, in their supplemental privilege log, Respondents assert "trade secret" or "privacy" "privileges" for 632 documents, and common interest privilege to 408 documents. *Id.* at ¶¶ 10, 13, Exs. 6, 9.

Life Fitness notes that Local Rule 250.5 requires that objections to a subpoena include citations to relevant authority. Respondents' responses to Life Fitness's subpoenas did not include any citations to relevant authority and are thus deficient. *Id.* at ¶¶ 6–7, Exs. 3–4. For the reasons set forth below, Respondents' objections are contrary to relevant authority.

## V. ARGUMENT

### A. Respondents are Improperly Withholding Documents Based on "Privacy" and "Trade Secret" Privileges or Objections.

Respondents have logged and are improperly withholding 632 documents on the basis of one or both of "privacy" and "trade secret" privileges, neither of which are privileges recognized under federal law. *Id.* at ¶ 10, Ex. 6. The 632 documents that Respondents have logged and withheld pursuant to privileges of either trade secret, privacy, or both, have been extracted from Respondents' Supplemental Privilege Log in Exhibit 6. Based on Life Fitness's review of Respondents' Supplemental Privilege Log, the documents logged but withheld appear to be responsive to at least Request Nos. 1–10, 12–15, which seek documents related to the negotiation and drafts of the SPSA and FMP/VA Copyright Assignment Agreement, and documents related to the negotiation and assignment of the VA Video copyrights between Respondents and Nextpulse, offers to license and licenses to the VA Video copyrights, and revenues related to the VA Video copyrights. *Id.* For the following reasons, Respondents should be compelled to produce all of the documents that they have withheld based on trade secret or privacy objections that are responsive to these Requests.

5

1

2

**1. Federal privilege law does not recognize Respondents' alleged trade secret and privacy "privileges."**

Although "trade secret" and "privacy" privileges may be recognized under California state law in certain circumstances, those are not privileges recognized under federal law. During meet and confers, Life Fitness explained to Respondents that only federal claims existed in the case and therefore, California state law privileges did not apply, but Respondents were unwilling to withdraw their "trade secret" and "privacy" privilege objections. Life Fitness, therefore, requests that the Court compel Respondents to produce the 632 documents identified in Exhibit 6.

In particular, in cases such as this involving federal questions, federal, not state, privilege law applies. *Lee v. Glob. Tel\*Link Corp.*, No. 15-cv-2495, 2017 WL 10575166, at \*7 (C.D. Cal. Sept. 6, 2017) ("[T]o the extent the subject state statues provide a privilege, they are not applicable in this discovery proceeding because only federal law on privilege applies in cases, such as this one, involving federal question jurisdiction.") (citing *United States v. Zolin*, 491 U.S. 554, 562 (1989); *RG Abrams Ins. v. Law Offs. of C.R. Abrams*, No. 2:21-cv-00194, 2022 WL 422824, at \*11 (C.D. Cal. Jan. 19, 2022) (finding the right to privacy as recognized under California state law was not applicable in a federal claims case) ("*RG Abrams I*"); *Hardie v. Nat'l Collegiate Athletic Ass'n*, No. 13-cv-346, 2013 WL 6121885, at \*3 (S.D. Cal. Nov. 20, 2013) ("Because jurisdiction in this action is based upon a federal question, California's privacy laws [based on the California constitution] are not binding on this court.").

Here, Nextpulse is only asserting claims for copyright infringement under the federal Copyright Act and for trade secret misappropriation under the federal Defend Trade Secrets Act. Marinelli Decl. at ¶ 30, Ex. 17. There are no state law claims asserted in the NDIL Action. As such, the privileges Respondents rely upon of "privacy" and "trade secret" do not apply in this case.

6

### 2. Respondents have not met their burden required to withhold documents based on trade secret protection.

Even if the Court were to find relevance to Respondents' trade secret objections, Respondents have not met their burden as to the 481 documents they have logged and withheld pursuant to trade secret objections. *Id.* at ¶ 11, Ex. 7. The 481 documents that Respondents have logged and withheld pursuant to privilege of trade secret have been extracted from Respondents' Supplemental Privilege Log in Exhibit 7. To withhold discovery of a trade secret, a party must first demonstrate that the information sought through discovery is a trade secret, and that disclosure of the secret might be harmful. *Upjohn Co. v. Hygieia Biological Laboratories*, 151 F.R.D. 355, 358 (E.D. Cal. 1993) (internal citation omitted). "If this showing is made, 'the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.'" *Id.* "Once the moving party has established relevance and necessity, the discovery is virtually always ordered." *Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, No. 07-cv-90, 2007 WL 4357672, at *2 (S.D. Cal. Dec. 11, 2007) (internal citations omitted).

Respondents have asserted blanket claims of "trade secrets" without demonstrating that any of the corresponding documents contain information that qualifies as trade secrets. *See, e.g.*, *L.G. Philips LCD Co. v. Tatung Co.*, No. F-07-0009, 2007 WL 869700, at *2–*3 (E.D. Cal. Mar. 21, 2007) (finding that third party failed to prove its information qualified as trade secrets, and thus, the court ruled that the information should be disclosed). Under California law, a trade secret is information that: (1) "the owner thereof has taken reasonable measures to keep such information secret," and (2) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Respondents have failed to demonstrate that any, let alone all, of the information they are withholding derives independent economic value from not being generally known to the public and that they have made efforts to maintain its secrecy.

For example, one category of documents that Respondents are withholding as trade secrets are documents relating to licenses or offers to license the asserted copyrights and related documents, which are responsive to Request No. 12 in the Subpoenas.  Marinelli Decl. at ¶¶ 6–7, Exs. 3–4 at 15–16.  Respondents objected that Request No. 12 "seeks confidential and/or proprietary business information, which if disclosed could harm [their] competitive position" and argued during meet and confers that their license agreements and related documents were trade secrets.  *Id.,* Exs. 3–4 at 16.  Respondents, however, did not provide any reasons why their license agreements and related documents derive value from not being known to the public or to Life Fitness.  Respondents allege that VA is a competitor to Life Fitness, but that alone is insufficient to establish that Respondents derive economic value from not disclosing the agreements and documents to Life Fitness.  Indeed, Respondents' claim that license agreements are trade secrets is weak given Nextpulse has produced six such license agreements that Netpulse entered into before the VA was sold to FMP.  *Id.* at ¶ 16.  Respondents cannot credibly maintain that these six license agreements are not trade secrets but others that they have not produced are trade secrets.  Therefore, to the extent there are additional offers to license agreements and related documents (such as negotiation documents) that were entered into before the sale to FMP or after FMP's acquisition of the relevant copyrights, then those documents should be produced.

Life Fitness also notes that Respondents have a financial interest in the outcome of the litigation, and FMP was the owner of the VA Video copyrights up until they were assigned to Nextpulse sometime after Nextpulse filed suit against Life Fitness.  *Id.* at ¶ 18, Ex. 12.  Respondents cannot reserve financial benefit from the lawsuit (even as a passive, non-participant) and also hide behind the fact that they are a non-party to refuse production of relevant information.  Certainly, if Respondents were parties to the lawsuit, there would be no question that the license agreements and related documents would be discoverable.

Even if Respondents could establish that their license agreements and related documents qualify as trade secrets, the Court should still compel their production as they are squarely relevant to Life Fitness's defenses, and Life Fitness's need for the license agreements and related

8

documents outweighs any purported risk to Respondents. Damages in this case relating to Nextpulse's copyright infringement claims may be based on a reasonable royalty analysis. Nextpulse's Fed. R. Civ. P. 26(a)(1) disclosures indicate that it is seeking a per unit royalty. *Id*. at ¶ 32, Ex. 19. Any license agreements or offers to license related to the asserted copyrights are relevant to the consideration of a reasonable royalty. FMP's license agreements, offers to license, and communications regarding licenses are particularly relevant because a reasonably royalty analysis will consider a hypothetical negotiation between Life Fitness and the party who owned the copyrights at the time just before first infringement, here FMP. *See Microsource, LLC v. Eco World Group*, LLC, 587 F. Supp. 3d 770, 828 (N.D. Iowa 2022).

Therefore, the Court should compel Respondents to produce the documents in their Supplemental Privilege Log that have been withheld based on trade secret objections identified in Exhibit 7, including VA018319, VA024685, VA024703, VA024714, VA024715, VA025412, as well as any other offers to license, license agreements, and related documents that have not yet been produced and that were entered into both before and after FMP acquired the copyrights at issue.

### 3. Respondents have not met their burden required to withhold documents based on privacy.

Similarly, Respondents have not met their burden as to the 631 documents they have logged and withheld pursuant to the privacy objections, as shown in Exhibit 8. Marinelli Decl. at ¶ 12, Ex. 8. As an initial matter, as discussed *supra*, no privacy privilege applies in federal court to federal claims. Regardless, even if the Court were to consider this privilege, a party asserting a privacy objection must establish first that there exists a reasonable right of privacy with respect to the information sought to be disclosed. *See Christian v. Cnty. of Los Angeles*, No. 2:18-cv-05792, 2020 WL 4820006, at *2 (C.D. Cal. Jan. 28, 2020) (rejecting privacy claim without a showing of a reasonable right to privacy). Parties seeking to avoid disclosure must explain how the purported privacy interests will be harmed by the disclosure of the information. *RG Abrams Ins. v. Law Offs. of C.R. Abrams*, No. 221-cv-00194, 2021 WL 10312432, at **11–12 (C.D. Cal. Nov. 5, 2021)

9

("*RG Abrams II*").  Even where a right to privacy exists, it is not an absolute bar to discovery and courts must balance the need for the information against the claimed privacy right.  *Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309945, at *9 (E.D. Cal. Jan. 30, 2007), *modified on reconsideration*, 2007 WL 9747771 (E.D. Cal. Mar. 16, 2007).

In *RG Abrams I*, applying federal privacy protections, the court overruled the defendant's privacy objections where the defendants failed to establish that there existed a reasonable right of privacy to the information sought by any of the requests and had offered no reasoning or legal authority to support their privacy objections.  *RG Abrams Ins.,* No. 2:21-cv-00194, 2022 WL 422824, at *11.  The court in *RG Abrams I* recognized a "limited corporate privacy interest" but that "corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, although some right to privacy exists."  *Id.*  "Courts routinely have found that a corporation's privacy rights may give way where the information requested is material, not available from another source, and protected from disclosure by a protective order."  *Id.*  The court overruled defendants' privacy objections because the defendants did not offer any alternative means by which the plaintiff may have obtained the information and any risk of harm was mitigated by a protective order.  *Id.* at *12.

Respondents have neither explained what information is considered private nor introduced the harm that would result from the disclosure of financial documents regarding financial information and documents regarding the alleged assignments of the VA Videos among Nextpulse and Respondents.  Even if Respondents do have a legitimate privacy interest, this Court should find that a proper balancing of the competing interests weighs in favor of granting the discovery Life Fitness seeks because Respondents cannot establish that any privacy right they may have in the information outweighs Life Fitness's need for information.

Like in *RG Abrams II*, the discovery sought is highly relevant to Life Fitness's claims.  Specifically, the documents regarding the assignment and reassignment of VA Videos are relevant to Life Fitness's standing argument, supporting the notion that Nextpulse did not own the asserted copyrights until after the lawsuit was filed and not at the "effective date" as Nextpulse contends.

10

If Nextpulse lacked standing to sue, then the court in the NDIL Action lacks jurisdiction. Additionally, during meet and confers, Life Fitness's counsel explained to Respondents that the financial documents sought are those that contain information regarding the valuation of the VA Videos, which is also highly relevant to Life Fitness's damages analysis. For example, a jury will need to understand what negotiations occurred between Nextpulse and FMP concerning royalties when licensing the VA Videos in June 2019 to determine the measure of damages that a licensee would pay the licensor during a hypothetical negotiation between Life Fitness and FMP. Respondents' withheld information is also relevant to the valuation of Nextpulse's claims against Life Fitness to the extent negotiations took place between Respondents and Nextpulse to determine the amount Respondents may collect when exercising their option to a percentage of proceeds of the litigation under the FMP/VA Copyright Assignment Agreement.

In addition, Respondents have not offered or suggested any alternative means for Life Fitness to obtain this information in a manner that would not implicate Respondents' purported privacy interests. Moreover, as discussed below, there is Confidentiality Order set in place in the NDIL Action, with provisions that allow a third party to designate any such documents that mitigates any risk to Respondents.

Although Life Fitness's subpoenas did not specifically request tax returns, Respondents' privacy objections appear to be directed in part to their tax returns.[3] Presumably, Respondents logged tax return on their privilege log because the returns contain information related to ownership or value of the VA Videos. To the extent the tax returns contain information relevant to the ownership or valuation of the VA Videos, then Life Fitness Respondents may produce that information but redact any other tax information that is not relevant to the underlying NDIL Action and not responsive to the Subpoenas.

---

[3] Life Fitness is aware that in litigation between Nextpulse and Brunswick in California state court, Respondents produced, and then clawed back, certain documents relating to tax returns. To the extent the documents were clawed back based on privacy privileges, that privilege would not apply in this case where California state privileges do not apply. In any event, Life Fitness only seeks tax returns to the extent they contain information relevant to ownership or valuation of the VA Videos.

11

**4. The Confidentiality Order in this case adequately protects Respondents' confidentiality concerns.**

To the extent Respondents have any valid claims to trade secret or private information, the Confidentiality Order that the underlying court entered in the NDIL Action adequately protects any risk to Respondents. Marinelli Decl. at ¶ 33, Ex. 20. The Confidentiality Order allows a third-party producing party to designate documents as Confidential or Highly Confidential – Attorneys' Eyes Only. Access to documents that a producing party designates as Confidentiality or Highly Confidential – Attorneys' Eyes Only is limited to certain categories of individuals. The parties to the lawsuit may only disclose documents designated as Confidential to counsel for the parties who have responsibility for the action: (1) counsel, (2) parties, (3) the Court and its personnel, (4) Court reporters and recorders, (5) contractors, (6) consultants and experts, (7) witnesses at depositions, (8) author or recipient, (9) others by consent. *Id.* at ¶ 33, Ex. 20 at 5–7. The Highly Confidentiality – Attorneys' Eyes Only designation further limits disclosure of documents to: (1) outside counsel of record, (2) the Court and its personnel, (3) Court reporters and recorders, (4) contractors, (5) independent consultants and experts, (6) author or recipient, (7) others by consent. *Id.* at ¶ 33, Ex. 20 at 7–8. Moreover, to the extent that Life Fitness is required to file with the court any confidential documents that Respondents produce with such designations, Life Fitness will request to file the documents under seal as permitted by Northern District of Illinois Local Rule 5.8.

During the meet and confers, Respondents' counsel argued that the Confidentiality Order did not assuage their concerns because Respondents did not trust that even if they designated documents Highly Confidential – Attorneys' Eyes Only, the information in the documents would not somehow be leaked to Life Fitness employees. *See id.* at ¶ 24, Ex. 15. First, Respondents' apparent distrust of Life Fitness's counsel is baseless, as Respondents have no reason to believe that Life Fitness's counsel will violate the Confidentiality Order. Second, if a paranoid view like Respondents' was a sufficient basis to avoid producing documents despite the presence of a protective order such as the Confidentiality Order in this case, then any parties' ability to obtain discovery and develop facts necessary to support claims or defenses would be helplessly

12

_____

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LIFE FITNESS'S MOTION TO ENFORCE THIRD PARTIES FORWARD MOTION PICTURES' AND
VIRTUAL ACTIVE'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

obstructed.  Indeed, Federal Rule of Civil Procedure 26(c)(1)(G) provides that a court may enter a protective order that specifies how trade secrets or other confidential research, development, or commercial information may be revealed.  That is precisely what the Confidentiality Order does. *Id.*  Respondents have not provided any legitimate reason why the Confidentiality Order in the NDIL Action would not protect their confidential information.  Additionally, they have not sought any modifications or a separate protective order to govern the production of their documents.  *See Mashiri v. Ocwen Loan Servicing, LLC*, No. 12-cv-2838, 2014 WL 4608718, at *2 (S.D. Cal. Sept. 15, 2014) (ruling that none of the asserted objections, including "objections based upon privacy" justified an instruction not to answer, while also noting that stipulated protective order removed privacy concerns).  Instead, Respondents have outright refused the production of their withheld documents under all offered and available protective measures.

### 5.  Respondents are free to redact non-responsive information.

While Life Fitness maintains that Respondents do not have a basis to withhold the documents identified above under trade secret and privacy privileges or objections, the practical solution to this issue is that Respondents are free to reasonably redact non-responsive information. Life Fitness is not asking for personal data, such as the social security numbers of defendants and other individuals, birth dates, home addresses, banking information, or personal income information.  This District's Local Rules expressly contemplate as much.  *See* E.D. Cal. L.R. 140 (permitting redaction of personally identifying and financial information without need for a Court order).  Life Fitness is only seeking documents responsive to the subpoena requests, which relate to Life Fitness's defenses to Nextpulse's claims.  Therefore, Respondents can redact any non-responsive sensitive information and produce the redacted documents.  *Kemper Independence Ins. Co. v. Wells*, No. 1:17-cv-01612-AWI-SAB, 2018 WL 558791, at *2 (E.D. Cal. Jan. 25, 2018) (ordering the redaction of personal information only as there was no justification from the parties for broader redactions).

For the foregoing reasons, Respondents should be compelled to produce all of the documents identified in Exhibits 6-8 that are responsive to Request Nos. 1–10, 12–15 that they have withheld based on trade secret or privacy objections.

**B.    Respondents Cannot Withhold Communications, Documents, and Attachments with Nextpulse Relating to the Assignment of the Asserted Copyrights Under the Common Interest Doctrine Because They Are Not in Furtherance of a Common Legal Strategy.**

Respondents incorrectly apply the common interest doctrine to withhold at least 408 documents that appear to have been communicated between Respondents or Respondents' counsel and Nextpulse or Nextpulse's counsel.  Marinelli Decl. at ¶ 13, Ex. 9.  The documents for which Respondents have asserted "Common Interest Doctrine" have been extracted from Respondents' Supplemental Privilege Log in Exhibit 9.  Many of those documents appear to relate to the negotiation and execution of the SPSA and FMP/VA Copyright Assignment Agreement, both of which relate to the assignment of the VA Video copyrights between Respondents and Nextpulse and which are responsive to Request Nos. 1, 4–7, and 15.  Marinelli Decl.  at ¶¶ 4–5, Ex. 1–2.  Respondents should be compelled to produce documents they withheld based on the common interest doctrine responsive to these Requests that relate to the negotiation and execution of any agreements relating to the assignment of the VA Video copyrights between Nextpulse and Respondents, including the SPSA and FMP/VA Copyright Assignment Agreement.

For example, Respondents invoked the common-interest doctrine to withhold several communications and attachments sent in 2022 between Nextpulse's principal, Thomas Proulx, and Nextpulse's litigation counsel, E. David Marks, Kathryn Curry, and Kim Donovan.  *Id*. at ¶ 13, Ex. 9.  Based on Respondents' privilege log, many of these documents relate to FMP's and VA's assignment of the VA Videos back to Nextpulse, which as discussed above, occurred after Nextpulse filed suit against Life Fitness.  *Id*.  These documents are at least responsive to Life Fitness's Subpoena Request Nos. 1, 4–7, and 15.  *Id*. at ¶¶ 4–5, Ex. 1–2 at Ex. B.

Respondents have not shown that these documents were shared in furtherance of a common legal strategy.  Moreover, the documents shared between Respondents and Nextpulse relating to

14

1  the assignment of the VA Videos between them were made as part of an arms-length transaction

2  business transaction for the purpose of transferring intellectual property rather than in furtherance

3  of a common litigation strategy.

4      The common interest privilege applies where "(1) the communication is made by separate

5  parties in the course of a matter of common interest; (2) the communication is designed to further

6  that effort; and (3) the privilege has not been waived." *United States v. Bergonzi*, 216 F.R.D. 487,

7  495 (N.D. Cal. 2003).  To apply the privilege to specific communications, the parties must show

8  that the communications furthered the joint defense effort or joint legal interest.  *See, e.g., In re*

9  *Pac Pictures Corp. v. Dist. Court*, 679 F.3d 1121, 1129 (9th Cir. 2012) (shared desire to see the

10  same outcome in a legal matter not enough for common interest, where there is no proof that the

11  parties are pursuing a "joint strategy" in accordance with an agreement).

12      The common interest privilege only applies to common legal interests and not common

13  commercial interests that merely include a concern about litigation.  *See, e.g.*, *Luminara*

14  *Worldwide, LLC v. Liown Elecs. Co.*, No. 14-cv-3103, 2016 WL 11783857, at *7 (D. Minn. Mar.

15  29, 2016) (finding that communications regarding an interest in the right to transfer the right to

16  enforce patents is not protected by the common interest privilege).  In addition, the common

17  interest privilege requires actual cooperation in litigation, not just similar legal interests.  *For Your*

18  *Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 21920244, at *3 (N.D. Ill. Aug.

19  12, 2003) (parties must demonstrate 'actual cooperation toward a common legal goal' and not

20  merely common representation or common interests).

21      Here, the common interest doctrine does not apply to documents shared between

22  Respondents and Nextpulse before the actual assignment of the VA Videos from Respondents to

23  Nextpulse was actually executed.  When the SPSA was negotiated, Nextpulse and FMP were

24  separate companies involved in an arms-length transaction that included the assignment of the VA

25  Video copyrights from Nextpulse to FMP.  Then from that time to when the Assignment was

26  actually executed, FMP owned the VA Video copyright,s that Nextpulse sought to assert against

27  Life Fitness.  Nextpulse needed to acquire the VA Video copyrights back from FMP.  The two

28

parties, and their counsel, communicated, negotiated, and exchanged drafts in an arms-length transaction. For example, Respondents withheld and logged what appears to be a draft copyright license agreement dated in November 2022 entitled "Draft_Copyright_License_NP_and_LF_LLC_[jdb_redline_20221118b].docx" (Bates numbered VA026016) with privilege claims of "attorney work product; attorney-client privileged; common interest doctrine." Marinelli Decl. at ¶ 13, Ex. 9. During all of these times, the parties were adverse parties with respect to the ultimate assignment, whenever it was actually executed.

The type of common interest claim raised by Respondents has already been considered and rejected by California district courts. For example, in *Synopsys, Inc. v. Ricoh Co.*, former co-owners of a patent sought to protect from a third party allegedly attorney-client privileged documents the co-owners shared with each other prior to the assignment of all rights in the patent to one of the owners. No. C-03-2289 MJJ, 2006 WL 2479109, at **1–2 (N.D. Cal. Aug. 28, 2006). The documents at issue were "about the assignment agreement and negotiations related to that agreement." *Id.* at *2. The court found that the common interest doctrine did not apply to shield those documents from production. *Id.* According to the court, if the common interest "was the interest (as co-owners) in enforcement of the patents at issue," the parties "fail[ed] to explain how documents related to negotiations about transferring and the actual transferring of patent rights were in furtherance of [that] interest." *See also Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 579–80 (N.D. Cal. 2007) (finding that common interest doctrine did not apply where alleged infringer's disclosure of its assessment of patent infringement claim to potential purchaser was helpful in facilitating a potential commercial transaction but did not further common legal strategy in connection with litigation).

Similarly, Respondents have failed to clarify how the negotiation and drafts of the SPSA and FMP/VA Copyright Assignment Agreement were made in furtherance of a common legal interest. Indeed, the SPSA and the FMP/VA Copyright Assignment Agreement provided that Respondents assigned their rights to claims against Life Fitness to Nextpulse. It follows therefore

16

that Respondents had no legal interest in Nextpulse's claims against Life Fitness[4] and the agreements cannot be in furtherance of a common legal strategy.

Therefore, Respondents should be compelled to produce documents they withheld based on the common interest doctrine that relate to the negotiation and execution of any agreements relating to the assignment of the VA Video copyrights between Nextpulse and Respondents, including the SPSA and FMP/VA Copyright Assignment Agreement.

### C. Documents Relating to the Date the FMP/VA Copyright Assignment Agreement Was Signed Are Not Privileged.

Document Request No. 15 seeks from Respondents documents and communications related to the date the FMP/VA Copyright Assignment Agreement was signed:

> All documents and communications related to the date the Second Agreement was actually signed (either electronically or by wet signature) by Thomas A. Proulx and Christopher Galipo, including but not limited to any communications exchanging drafts of the Second Agreement for signature and any letters, memos, meeting minutes, notes, and other documentation that reference the planning, discussion, or finalization of the execution date of the agreement.

Marinelli Decl. at ¶¶ 4–5, Exs. 1–2 at 17. Documents relating to the date the FMP/VA Copyright Assignment Agreement was signed are important to Life Fitness's defense in the underlying litigation that Nextpulse lacked standing to sue Life Fitness for copyright infringement at the time they filed the complaint. As discussed above, Life Fitness asserts that at the time Nextpulse sued Life Fitness, Nextpulse did not own the copyrights it asserted. Life Fitness explained the relevance of documents responsive to Request No. 15 in the October 9, 2024, meet and confer. *Id*. at ¶ 23. In particular, months after Nextpulse filed the underlying suit, Nextpulse tried to execute a *nunc pro tunc* assignment of the VA Video copyrights from VA and FMP back to Nextpulse. The *nunc pro tunc* assignment was part of the Agreement that had a stated "effective date" of June 9, 2022, but as discussed above, the FMP/VA Copyright Assignment Agreement was executed after Nextpulse filed suit against Life Fitness. *Id*. at ¶ 18, Ex. 12. This is important because to be

---

[4] Life Fitness acknowledges that pursuant to the FMP/VA Copyright Assignment Agreement, Respondents had an option to receive a portion of any proceeds that Nextpulse receives in its litigation against Life Fitness. This, however, is financial interest and not a legal interest.

17

entitled to bring a suit for copyright infringement, Nextpulse was required to have statutory and constitutional standing at the time it sued Life Fitness.  *HyperQuest Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011). A plaintiff "must establish standing at the time suit is filed and cannot manufacture standing afterwards."  *Pollack v. U.S. Dep't of Just.*, 577 F.3d 736, 742 n.2 (7th Cir. 2009); *Pennell v. Glogal Trust Management, LLC*, 990 F.3d 1041, 1044 (7th Cir. 2021). A *nunc pro tunc* assignment executed after suit is brought cannot confer standing.  *Enzo APA & Son, Inc. v. Geopag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998).

Here, since the FMP/VA Copyright Assignment Agreement was signed after Nextpulse filed the lawsuit, it is at best a *nunc pro tunc* assignment that is ineffective in conferring Nextpulse standing at the time it filed the suit.  Thus, for Life Fitness to pursue this defense, Life Fitness needs discovery related to the actual date the FMP/VA Copyright Assignment Agreement was signed.  During meet and confers, Respondents maintained the incorrect position that the date the FMP/VA Copyright Assignment Agreement was actually signed did not matter, and that the effective date was the only relevant date.  As set forth above, Life Fitness contends that Respondent's position does not comport with well-established standing law that standing is evaluated at the time the suit is filed and cannot be cured with a *nunc pro tunc* assignment. Nextpulse is free to make its standing argument in the NDIL Action, but this court is not the proper court to address which party is correct on Nextpulse's standing in the NDIL Action.  Respondents should not be able to withhold factual information such as communications attaching the actual signed agreement establishing the date of execution.

Furthermore, Respondents cannot claim that documents sufficient to identify the date that the FMP/VA Copyright Assignment Agreement was signed are privileged.  For example, communications between an attorney and Respondents for the purpose of securing a signature are not privileged communications because they are not for the purposes of seeking, providing or obtaining legal advice.  *See Harris v. United States*, 413 F.2d 316, 320 (9th Cir. 1969) (acknowledging a "general rule that ministerial or clerical services performed by an attorney are not within the [attorney-client] privilege"); *see also, e.g.*, *United States v. Salyer*, 853 F. Supp. 2d

_____

1014, 1018 (E.D. Cal. 2012) (noting that the Ninth Circuit requires communications to seek, render, or be related to legal advice to be protected by the attorney-client privilege).  It is not clear from Respondents' log whether they withheld such documents as privileged, but it is clear that no privilege can be asserted for documents that simply identify dates of signatures, and during the various meet and confers Respondents have objected to providing any documents that establish this date.

For these reasons, Respondent should be compelled to comply with the subpoenas' requests for documents related to the date the Second Agreement was signed, including documents from the June–November 2022 (and potentially later) timeframe, when Life Fitness contends the Agreement was actually signed.

### D. Respondents Cannot Withhold Email Attachments Merely Because They Are Associated with a Privileged Email.

Respondents have logged at least 186 attachments to emails without providing any independent basis for a claim of privilege other than the fact that the attachment is associated with an email that is allegedly privileged.  Marinelli Decl. at ¶ 14, Ex. 10.  Respondents' assertions of privilege over email attachments are incorrect and they must show that the information in each email attachment is protected.  *See AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *4 (N.D. Cal. Apr. 18, 2003) ("An attachment must qualify on its own for attorney-client privilege and 'must be listed as a separate document on the privilege log.'") (quoting *O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999)).

Based on Life Fitness's review of Respondents' Supplemental Privilege Log, Respondents have failed to meet their burden of showing privilege with respect to numerous such attachments. For example, Respondents have logged as attorney-client or work product privilege attachments that that do not appear to be attorney-client communications or attorney work product.  For example, it is unclear to Life Fitness how financial reports, letters of transmittal, and signature page documents like "Netpulse_Inc_Monthly_Financials_07-31-11_v1.xlsx," "Virtual Active - PDF Letter of Transmittal for Mary E. Bircheff_(PALIB2_5704352_2).PDF," or

"8B._C._Galipo_sig_pages.pdf," are privileged and used in a way where an attorney's presence meets the requirements of the attorney client or work product privilege.  Marinelli Decl. at ¶ 14, Ex. 10.  Life Fitness has extracted a set of email attachments that are similar in nature to these examples in Exhibit 10.  Life Fitness requests that the Court compel Respondents to produce the email attachments identified in Exhibit 10.  The Court could also overrule Respondents' objections to producing attachments altogether, but Life Fitness is most interested in the documents that it has identified in Exhibit 10.  To the extent the attachments contain any privileged information, Respondents should produce non-privileged portions of the attachments by producing a redacted copy.  *See Garcia v. Cnty. of Stanislaus*, No. 1:21-cv-00331-JLT-SAB, 2022 WL 4237960, at *18 (E.D. Cal. 2022) (quoting *In re New Century*, No. CV 07-0931 DDP (FMOx), 2009 WL 10691336, at *7 (C.D. Cal. Dec. 7, 2009)) ("any document that contains both protected and responsive information shall be redacted to eliminate any reference to attorney-client matters")).

**E.    Life Fitness Does Not Oppose Transferring this Motion to NDIL.**

"When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  The Advisory Committee notes to Rule 45 provide guidance as to when exceptional circumstances may be found:

"[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion."

While this Court has the authority and jurisdiction to decide the improper privileges and objections based on the record before it, Life Fitness would not oppose the Court, in its discretion, transferring this motion to the Northern District of Illinois.  The underlying case has been pending in the Northern District of Illinois since June 2022, and a magistrate judge has been assigned to supervise discovery.  Life Fitness expects that in the NDIL Action, Nextpulse will assert the same

20

common interest privilege on communications between Nextpulse and Respondents that Respondents have here based on some of the document requests sent to Nextpulse (supra §V.B). Therefore, there may be judicial economy gained by transferring the Motion if the Court deems it appropriate.

## VI.    CONCLUSION

For the reasons set forth above, Life Fitness respectfully requests that this Court grant this Motion.


Dated: December 20, 2024                              Respectfully submitted,

                                                      By: */s/ Shane G. Smith*
                                                      MCCORMICK BARSTOW LLP
                                                      Shane G. Smith, #272630
                                                      *shane.smith@mccormickbarstow.com*
                                                      Melissa K. Cerro, #304268
                                                      *melissa.cerro@mccormickbarstow.com*
                                                      7647 N. Fresno Street
                                                      Fresno, CA 93720
                                                      Tel.: (559) 433-1300
                                                      Fax: (559) 433-2300

                                                      IRWIN IP LLP
                                                      Jason Keener (*pro hac vice* forthcoming)
                                                      *jkeener@irwinip.com*
                                                      Joseph F. Marinelli (*pro hac vice*
                                                      forthcoming)
                                                      *jmarinelli@irwinip.com*
                                                      150 N. Wacker Dr., Suite 700
                                                      Chicago, IL 60606
                                                      Tel.: (312) 667-6080

                                                      Counsel for Defendant
                                                      *Life Fitness, LLC*

---

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LIFE FITNESS'S MOTION TO ENFORCE THIRD PARTIES FORWARD MOTION PICTURES' AND
VIRTUAL ACTIVE'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2024, a copy of the foregoing Memorandum Of Points And Authorities In Support Of Life Fitness's Motion To Enforce Third Parties Forward Motion Pictures' and Virtual Active's Compliance With Subpoena For Documents was served electronically on Respondents FMP and VA and Plaintiff Nextpulse and by regular U.S. mail.

GCA Law Partners LLP
Kathryn C. Curry
*kcurry@gcalaw.com*
2570 W. El Camino Real, Suite 400
Mountain View, CA 94040

Tolpin & Partners, PC
Mark R. Bagley
*mark@tolpinlaw.com*
30 N. LaSalle Street, Suite 1510
Chicago, IL 6062

*Counsel for Nextpulse, LLC*

Brandstetter Law, PC
Jeffrey Brandstetter
*brandstetterlaw@gmail.com*
One Market, Spear Tower, 36th Floor
San Francisco, CA 94105

*Counsel for Forward Motion Pictures LLC and Virtual Active, Inc.*

/s/ *Shane G. Smith*

Shane G. Smith

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
LIFE FITNESS'S MOTION TO ENFORCE THIRD PARTIES FORWARD MOTION PICTURES' AND
VIRTUAL ACTIVE'S COMPLIANCE WITH SUBPOENA FOR DOCUMENTS