UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIFE FITNESS, LLC,<br><br>        Petitioner,<br><br>    v.<br><br>FORWARD MOTION PICTURES, LLC, et al.,<br><br>        Respondents. | No.  2:24-mc-00494 DC CKD<br><br>ORDER GRANTING MOTION TO ENFORCE THIRD PARTY SUBPOENAS<br><br>(ECF No. 1) |

      Petitioner Life Fitness, LLC filed the instant motion to enforce third-party subpoenas in this miscellaneous case on December 23, 2024.  (ECF No. 1.)  On January 13, 2025, Respondents Forward Motion Pictures, LLC ("FMP") and Virtual Active, Inc. ("VA") filed their opposition.  (ECF No. 11.)  On January 23, 2025, Petitioner filed a reply.  (ECF No. 12.)  On February 3, 2025, the parties also filed a joint statement re discovery disagreement.  (ECF No. 14.)  Petitioner and respondents appeared for a hearing on February 4, 2025, before the undersigned.  Attorneys Joseph Marinelli and Shane Smith appeared on behalf of petitioner, and Attorney Jeffrey Brandstetter appeared on behalf of respondents.  For the reasons set forth below, petitioner's motion to enforce third-party subpoenas is GRANTED.

////

////

1

## I. Background

### A. The Underlying Action

The motion to enforce third-party subpoenas currently before the Court is related to a current case pending in the Northern District of Illinois between Nextpulse, LLC ("Nextpulse") and Life Fitness, *Nextpulse, LLC v. Life Fitness*, No. 1:22-cv-3239 (N.D. Ill. Mar. 31, 2024). (ECF No. 1 at 6-7; ECF No. 14 at 4.) Nextpulse sued Life Fitness on June 21, 2022, for alleged copyright infringement and trade secret misappropriation. (ECF No. 14 at 5-6.) The copyrights cover "virtual biking, running, and hiking video content used on treadmills and other cardiovascular equipment" ("VA Videos"). (*Id.* at 6.) Netpulse, Nextpulse's predecessor, acquired VA. (*Id.*) On February 28, 2019, Nextpulse and VA entered into a Stock Purchase Sale Agreement ("SPSA") with FMP. (*Id.*) Under this agreement, Nextpulse and VA assigned all right, title, and interest in their copyrights in the VA videos to FMP. (*Id.*) After signing this agreement, FMP owned all copyrights related to the VA Videos. (*Id.*)

Life Fitness filed a motion to dismiss Nextpulse's copyright claims for lack of standing because FMP allegedly owned the VA Video copyrights. (*Id.*) Nextpulse filed a first amended complaint, alleging that in 2022, VA and FMP transferred the VA Video copyrights back to Nextpulse. (*Id.*) Life Fitness filed another motion to dismiss on the same ground, and Nextpulse responded by including a 2022 copyright assignment agreement ("2022 FMP/VA Copyright Assignment Agreement") in which FMP and VA assigned the VA Videos back to Nextpulse. (*Id.*) The agreement has an "effective date" of June 9, 2022, but Life Fitness alleges that there is no evidence that the agreement was actually executed on that day. (*Id.*) Life Fitness believes based on other documents produced in response to subpoenas that the agreement was executed months after the complaint was filed. (*Id.*) Respondents dispute the purpose of these agreements. Respondents contend that the purpose of FMP assigning ownership of the copyrights to Nextpulse in the 2022 FMP/VA Copyright Assignment Agreement was to "effectuate the terms of the [SPSA]." (ECF No. 14 at 9.) Respondents state that FMP never retained the copyrights when it acquired VA from Nextpulse. (*Id.*) Those rights were expressly assigned to Nextpulse as part of the SPSA. (*Id.*)

2

In its complaint, Nextpulse alleges that the copyright infringement began in June 2019, when Life Fitness was sold by Brunswick Corp. to Lumos. (*Id.* at 7.) Life Fitness alleges that the copyrights to the VA Videos were owned by FMP, not Nextpulse, during the infringement period, and instead of FMP suing Life Fitness directly, FMP assigned the copyrights to Nextpulse. (*Id.*) Respondents contest this.

### B. The Discovery Dispute

On July 17, 2024, Life Fitness served subpoenas for documents and depositions on FMP and VA. (ECF No. 14 at 4.) The subpoenas were issued from the Northern District of Illinois. FMP is a Delaware limited liability company, and VA is a California corporation. (*Id.* at 3.) Both respondents have their principal places of business in Sacramento California. (*Id.* at 3-4.) The subpoenas required compliance in Sacramento, California. (*Id.*at 4.) On August 26, 2024, respondents served responses and objections to the subpoenas. (*Id.*) Respondents produced 4,985 documents with a privilege log containing over 2, 250 entries. (*Id.*) The parties met and conferred multiple times before filing the instant motion.

## II.   Legal Standards

The Court has broad discretion and authority to manage discovery. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("[W]hether or not discovery will be permitted . . . lies within the sound discretion of the trial court." (internal quotation marks and citations omitted)); *see Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). This discretion extends to whether to grant a motion to compel compliance with a Rule 45 subpoena for documents. *Sacks Holdings, Inc. v. Vaidya*, 2024 WL 4730424, at *2 (N.D. Cal. Nov. 7, 2024) (citing *Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987)).

The scope of discovery allowed under a Rule 45 subpoena is the same as the scope of discovery permitted under Rule 26(b). *In re Subpoena to Apple Inc.*, 2014 WL 2798863, at *2 (N.D. Cal. June 19, 2014); *see* Fed. R. Civ. P. 45, advisory committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)[.]").

1  However, Rule 45 specifies expressly that "[a] party or attorney responsible for issuing
2  and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on
3  a person subject to the subpoena." Fed. R. Civ. P. 45 (d)(1); *see also* Fed. R. Civ. P. 45
4  (d)(3)(A)(iv) ("On timely motion, the court for the district where compliance is required must
5  quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected
6  matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.").

7  A nonparty commanded to produce documents pursuant to a Rule 45 subpoena may
8  challenge the subpoena in one of three ways: (1) by written objection; (2) by moving to quash or
9  modify the subpoena; or (3) by moving for a protective order. *See* Fed. R. Civ. P. 26(c); Fed. R.
10 Civ. P. 45 (d)(2)(B), (d)(3). If a nonparty responds to a Rule 45 subpoena with objections, the
11 party who served the subpoena may move for an order compelling compliance. Fed. R. Civ. P.
12 45(d)(2)(B)(i). Subpoena-related motions under Rule 45 must be brought in "the court for the
13 district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i), (d)(3)(A)–(B), (e)(2)(B).

14 A party seeking to enforce a subpoena bears the burden of establishing that the subpoena
15 seeks relevant information within the appropriate scope of discovery. *Sacks Holdings, Inc.*, 2024
16 WL 4730424, at *2. The objecting party has the burden of persuasion o show that discovery
17 should not be allowed. *Id.* The court must balance the relevance of discovery sought, the need of
18 the requesting party, and any potential hardship to the party subject to the subpoena. *Id.*

19 **III.    Discussion**
20     **A. Court's Jurisdiction**
21 Petitioner states that it does not oppose transferring this motion to the Northern District of
22 Illinois (ECF No. 1-1 at 25), however, respondents oppose transferring the motion. (ECF No. 11
23 at 18.) Under Federal Rule of Civil Procedure 45(f), "[w]hen the court where compliance is
24 required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if
25 the person subject to the subpoena consents or if the court finds exceptional circumstances."
26 The parties do not contest that compliance with the subpoenas is required in this district.
27 *See* Fed. R. Civ. P. 45(c)(2); ECF No. 14 at 3-4. Both respondents have their principal place of
28 business in Sacramento, California. ECF No. 14 at 3-4. While petitioner does oppose

transferring the motion, it is respondents' consent that is required to transfer absent "exceptional circumstances." Here, respondents do not consent, and the court does not find exceptional circumstances to transfer the motion.

### B. Joint Statement

The parties are in dispute about whether they should have filed a joint statement re discovery disagreement under Local Rule 251(c). It appears that petitioner initially followed the briefing schedule for Local Rule 230, which does not require a joint statement. Respondents requested an extension of time to file their opposition to petitioner's motion (ECF No. 5), which the court granted (ECF No. 6). Respondents filed an opposition to petitioner's motion on January 13, 2025, in which they argued that petitioner should be sanctioned under Local Rule 110 for not complying with Local Rule 251(c). (ECF No. 11 at 19.) Petitioner filed its reply on January 23, 2025. (ECF No. 12.) The parties then filed a joint statement that was over 1,000 pages, on February 3, 2025, two days before the scheduled hearing. (ECF No. 14.) The Court has reviewed and will consider all briefing to decide this motion and declines to impose sanctions for failure to comply with Local Rule 251.

### C. Subpoenas at Issue

Petitioner moves to compel the enforcement of fifteen subpoenas served on the two respondents. Petitioner seeks information related to its argument that Nextpulse does not have standing to bring this case ("whether Nextpulse owned the copyrights prior to filing the Complaint"), and related to damages ("if infringed, what the value is of the asserted copyrights, as shown in the negotiation of the SPSA, the negotiation of the sale back to Nextpulse, and in third-party license agreements covering use of the VA Videos"). (ECF No. 14 at 11.) Respondents objected to the subpoenas, using essentially the same boilerplate objections for each request, on the grounds that the requests are "overbroad, vague, ambiguous, and unduly burdensome" and claiming privileges such as attorney-client privilege, attorney work product doctrine, common interest doctrine, and on the ground that the requests seek confidential and/or proprietary business information. (*See, e.g.*, ECF No. 14-1 at 55.) Respondents have produced over 5,000 documents in response to discovery requests and provided privilege logs for 2,371

documents withheld. (ECF No. 14 at 13.) Based on the Court's review of the filings, petitioner seeks 632 of the documents where the objections are based on trade secret privilege and privacy, and 408 documents objected to based on the common interest doctrine. (*See* ECF No. 14 at 16; ECF No. 1 at 10, 12, 19.) Petitioner also seeks 186 email attachments associated with privileged emails. (ECF No. 1 at 24.)

The subpoenas at issue are reproduced below:

1. All documents and communications related to any sale, assignment, license, or transfer of any intellectual property or rights to any intellectual property between or among FMP, Virtual Active, or Nextpulse, including but not limited to any sale, assignment, license, or transfer of rights between FMP, Virtual Active or Nextpulse in VA Content or Software. (ECF No. 1-3 at 49.)

2. All documents and communications relating to any assignment, license, or transfer by Virtual Active to Nextpulse of rights against Life Fitness Corporation [Brunswick Corporation][1] or Life Fitness. (*Id.* at 50; *id.* at 71.)

3. All documents and communications relating to the negotiation of the SPSA, including but not limited to any negotiations regarding the sale, assignment, license, or transfer of any intellectual property or rights to any intellectual property between or among FMP, Virtual Active, or Nextpulse in VA Content or Software or any negotiations regarding the assignment, license, or transfer by Virtual Active to Nextpulse of rights against Life Fitness [Brunswick] and Life Fitness. (*Id.* at 51, 72.)

4. All documents and communications relating to the negotiation of the Second Agreement, including but not limited to negotiations regarding the sale, assignment, license, or transfer of any intellectual property or rights to any intellectual property between or among FMP, Virtual Active, or Nextpulse in VA Content or Software or negotiations regarding the assignment, license or transfer by Virtual Active to Nextpulse of rights against Life Fitness [Brunswick] and Life Fitness. (*Id.* at 52, 73.)

---

[1] Essentially the same subpoenas were served on both respondents. Any differences are indicated in brackets.

6

5. All documents and communications supporting or refuting the statements in Recitals C and E of the Second Agreement.  (*Id.* at 53, 73.)

6. All drafts and versions of the SPSA and the Second Agreement, including any drafts with comments or revisions by any party involved in the negotiation, drafting, or execution of the SPSA and the Second Agreement that relate to the sale, assignment, license or transfer of any intellectual property or rights to any intellectual property between or among Virtual Active, Nextpulse, or FMP or any transfer by Virtual Active to Nextpulse of rights against Life Fitness [Brunswick] and Life Fitness.  (*Id.* at 53, 74.)

7. All documents and communications related to any reasons why the Second Agreement was entered into by the parties thereto, including by not limited to any emails, letters, memos, meeting minutes, and notes.  (*Id.* at 54.)

8. All communications between FMP and any legal, financial, or business advisors concerning sale, assignment, license or transfer of any intellectual property or rights to any intellectual property between or among FMP, Virtual Active, or Nextpulse, including but not limited to, the sale, assignment, license or transfer of rights between FMP, Virtual Active, or Nextpulse in VA Content or Software or any transfer by Virtual Active to Nextpulse of rights against Life Fitness [Brunswick] and Life Fitness.  (*Id.* at 55, 76.)

9. All documents and communications referring to any reasons for the sale, assignment, license or transfer of intellectual property or rights to any intellectual property between or among FMP, Virtual Active, or Nextpulse, including but not limited to reasons for the sale, assignment ,license or transfer of rights between FMP, Virtual Active, or Nextpulse in VA Content or Software or the reasons for any transfer by Virtual Active to Nextpulse of rights against Life Fitness [Brunswick] and Life Fitness.  (*Id.* at 56, 76-77.)

10. All communications with any third parties, other than Nextpulse or Virtual Active, concerning the sale, assignment, license or transfer of any intellectual property and any transfer by Virtual Active to Nextpulse of rights against Life Fitness [Brunswick] and Life Fitness rights to any intellectual property between or among FMP, Virtual Active, or Nextpulse, including but not limited to, the sale, assignment, license or any transfer of

rights between FMP, Virtual Active, or Nextpulse in VA Content or Software. (*Id.* at 57, 77-78.)

11. All documents relating to any employment agreements or consulting agreements for any individuals or entities involved in the development of any VA Content or Software, including but not limited to employment or consulting agreements including provisions related to the assignment, transfer, or ownership of intellectual property rights in VA content or Software. (*Id.* at 57-58.)

12. Documents sufficient to identify all proposed or actual grant of rights by Virtual Active, Nextpulse, or FMP to any VA Content or Software, including but not limited to any licenses or offers to license, security interests, covenants, assignments, conveyances, sales, offers to sell, or transfers, and any related communications, drafts, agreements, proposals, and documentation evidencing or relating to such grants of rights. (*Id.* at 58.)

13. Documents sufficient to identify the amount and source of any revenue received by FMP, Virtual Active, or Nextpulse on a quarterly basis from February 28, 2019, to the present for the use, licensing, or sale of VA content or Software. (*Id.* at 59.)

14. Documents sufficient to identify all licensees or purchasers of any VA Content or any other documentation that identifies any entities who have licensed or purchased VA Content or Software. (*Id.* at 60.)

15. All documents and communications related to the date the Second Agreement was actually signed (either electronically or by wet signature) by Thomas A. Proulx and Christopher Galipo, including but not limited to any communications exchanging drafts of the Second Agreement for signature and any letters, memos, meeting minutes, notes, and other documentation that reference the planning, discussion, or finalization of the execution date of the agreement.

### D. Relevancy and Proportionality

The Federal Rules limit the scope of subpoenas by the relevance standards set forth in Federal Rule of Civil Procedure 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"), and the considerations of

burden and expense set forth in Federal Rules of Civil Procedure 26(b)(2) and 45(c)(1). Rule 26 also includes an explicit proportionality requirement; discovery must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). This proportionality limitation applies to Rule 45 subpoenas to non-parties. *See St. Jude Medical S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Ore. 2015).

The party moving to compel a response must show that the information sought is relevant and proportional to the needs of the case. The relevancy threshold is fairly low. Petitioner argues that the information sought is relevant to its argument that Nextpulse does not have standing to bring its claim because Nextpulse did not own the 39 copyrights when it sued Life Fitness. Petitioner also argues that the information sought is relevant to calculate damages because that calculation involves a hypothetical price of the infringed property at the time of infringement.

The Court finds that information sought is relevant and proportional to petitioner's standing argument and damages claims. Petitioner is arguing that Nextpulse did not own the copyrights when it sued petitioner, and that FMP assigned the rights to Nextpulse so it could bring its claim. Petitioner seeks documents and information related to the formation and execution of the 2022 FMP/VA Copyright Assignment Agreement to determine when it was created to support its standing defense. This is relevant information. Petitioner also seeks license agreements and related documents for its damages analysis, which may be based on a reasonable royalty analysis that considers a hypothetical negotiation. ECF No. 14 at 22; *see Oracle Corp. v. SAP* AG, 765 F.3d 1081, 1091-93 (9th Cir. 2014). Therefore, the documents requested are also relevant to petitioner's damages analysis.

### E. Respondents Have Not Demonstrated the Information at Issue Is Protected by Privilege

#### 1. Trade Secret and Privacy Privileges

While the Court finds that the information is relevant and proportional, respondents have asserted various privileges. Petitioner argues that respondents improperly assert trade secret and privacy privileges, arguing that these privileges are not recognized by federal law, or alternatively, that respondents have not adequately demonstrated the information requested is a

9

trade secret or private.  (ECF No. 14 at 19-26.)  Respondents argue that federal law recognizes trade secret and privacy privileges and that they have met their burden to withhold documents under both privileges.  (ECF No. 14 at 29-32.)

Federal law recognizes both trade secret and privacy protections.  Federal Rule of Civil Procedure 45(d) allows the court to modify or quash a subpoena if it requires disclosure of a trade secret or confidential research, development, or commercial information.  Fed. R. Civ. P. 45(d)(3)(B)(i); *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014).  Trade secret or commercially sensitive information must be "important proprietary information" and the party challenging the subpoena must make "a strong showing that it has historically sought to maintain the confidentiality of this information." *Compaq Computer Corp. v. Packard Bell Elec., Inc.*, 163 F.R.D. 329, 338 (N.D. Cal. 1995).  Further, federal courts also recognize a constitutionally-based right of privacy that can be raised in response to discovery requests.  *Soto v. City of Concord*, 162 F.R.D. 603, 616 (N.D. Cal. 1995); *Stallworth v. Brollini*, 288 F.R.D. 439, 444 (N.D. Cal. 2012) (noting that "the United States Supreme Court has recognized a constitutional right to privacy, more specifically, a constitutional right to nondisclosure of one's personal information").

Here, respondents argue that they have met their burden to withhold information based on trade secret privilege.  Under the Defend Trade Secret Act, a "trade secret" is defined as: "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing."  The information must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure of use of the information."  18 U.S.C. § 1839(3).

Respondents allege that the information in this matter includes "confidential business terms, internal company specifics, customer information, and other trade secrets, all of which derive significant value from not being publicly known . . . and about which Respondents have

made commercially reasonable efforts to maintain their confidentiality." (ECF No. 14 at 31.) The information relates to respondents' "respective company matters, business dealings and trade secrets, including information relating to their respective private stock/membership interests, assets, inventory, marketing platforms, asset valuations, financing, debts, terms of sale, bank account and deposit information, customer and vendor information, customer and vendor contracts, licensing terms, payments, employee compensation and other private employee-related information." (ECF No. 14-2 at 3, ¶ 7 (Declaration of Jeffrey D. Brandstetter).) Respondents allege that they "carefully protect the confidentiality of their financial information, investors' identities, customer contracts, bank information, employee and investor ownership interests and information, transactional activity, and employee personal information." (*Id.* at ¶ 8.) Respondents also contend that they take commercially reasonable efforts to keep the information private. (*Id.*) Respondents argue that disclosure of this information could cause substantial financial and competitive harm to respondents by providing advantages to their competitors, who would know their assets and valuations, customer contracts and contacts, licensing terms, and "much more." (*Id.* at ¶ 11.)

Respondents have not met their burden to show that the information sought is protected trade secrets. Respondents generally describe the information as "information relating to their respective private stock/membership interests, assets, inventory, marketing platforms, asset valuations, financing, debts, terms of sale, bank account and deposit information, customer and vendor information, customer and vendor contracts, licensing terms, payments, employee compensation and other private employee-related information." However, this vague list of terms is not enough to explain why the information in the privilege log is a "important proprietary information." *Compaq Computer Corp*, 163 F.R.D. at 338; *see Gonzales v. Google, Inc.*, 234 F.R.D. 674, 684-85 (N.D. Cal. 2006).

Further, respondents have not shown why the information is protected by the privacy privilege. Corporations have a limited privacy interest. *RG Abrams Ins. v. Law Offices of C.R. Abrams*, 2022 WL 422824, at *11 (C.D. Cal. Jan. 19, 2022) (corporate privacy rights include non-disclosure of confidential records and gross revenue information). The party asserting the

11

privacy privilege must show that there is a reasonable right of privacy in the information sought. *See id.* However, corporate privacy rights may give way if the information is material, it cannot be obtained from another source, and it is protected by a protective order. *Id.*

Here, the information petitioner seeks is relevant and proportionate to its claim. While respondents argue that the documents are confidential business records, petitioner has presented evidence that Nextpulse has admitted to deleting company documents from over a dozen key employees, which demonstrates that documents may not be available from another source. ECF No. 14 at 27; *see RG Abrams Ins.*, 2022 WL 422824, at *11. Further, there is a protective order in place that can adequately protect this information.

Accordingly, respondents have not adequately shown that the information sought should not be disclosed based on these privileges, or that the information cannot be adequately protected by the protective order in place.

### 2. Common Interest Privilege

Petitioner also argues that respondents improperly asserted the common interest privilege on 408 documents. The common interest privilege is not an independent privilege, but rather a "narrow exception to the general rule that disclosing information to a third party constitutes a waiver of the attorney-client privilege." *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1019 (N.D. Cal. 2022). This doctrine applies only if the communication at issue is privileged. "To successfully invoke the doctrine, the party asserting the privilege must show: '(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived.'" *Id.* (citation omitted). The interest must be a common legal, as opposed to commercial interest. *Id.*

Respondents argue that they share "a common interest in the underlying litigation" with Nextpulse, and a common interest in the SPSA and "all negotiations leading up to and including the finalization" of the agreement. (ECF No. 14 at 41.) However, a "shared desire to see the same outcome in a legal matter" is not sufficient to invoke the common interest privilege. *Rodriguez*, 620 F. Supp. 3d at 1019. Rather, the parties "must make the communication in pursuit

of a joint strategy in accordance with some form of agreement." *Id.* While respondents also allege that the 2022 FMP/VA Copyright Assignment Agreement was entered into in the anticipation of litigation, they do not provide enough evidence to show that they share a joint legal strategy. Accordingly, respondents have not shown that the common interest doctrine applies here.

### 3. Documents Related to 2022 FMP/VA Copyright Assignment Agreement

Petitioner makes a specific argument that documents and communications related to the date the 2022 FMP/VA Copyright Assignment Agreement was signed are not privileged. (*See* ECF No. 14 at 43.) Respondents argue that these communications and drafts leading up to an agreement are protected by the attorney-client, work product, and/or common interest privileges because they included legal advice or analysis and/or were prepared in the anticipation of litigation. (*Id.* at 46.) As stated above, this information is relevant to petitioner's standing defense and there is a protective order in place. Accordingly, respondents have not adequately shown why the information sought should not be disclosed subject to the protective order.

### 4. Email Communications

Petitioners argue that respondents have claimed privilege over 186 email attachments because they were attached to privileged emails. (ECF No. 14 at 47.) However, respondents assert that each of the email attachments themselves were privileged. (*Id.* at 50.) An attachment to an email must qualify for a privilege on its own. *See Our Children's Earth Foundation v. Nat. Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015). Here, it appears that respondents have claimed each individual attachment is privileged. (ECF No. 14 at 50-52.). Therefore, to the extent the email attachments are privileged, they can be adequately protected by the protective order in place.

### F. Undue Burden

"In evaluating whether a subpoena is unduly burdensome, the court balances the burden imposed on the party subject to the subpoena by the discovery request, the relevance of the information sought to the claims or defenses at issue, the breadth of the discovery request, and the

13

litigant's need for the information." *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2014 WL 3573400, at *2 (S.D. Cal. July 18, 2014) (internal citations and quotations omitted).

Here, the Court has determined that the information is relevant and proportionate to the needs of the case. Respondents argue that they are both small companies with only three people (the same three people), and they have analyzed over 7,400 documents, produced over 5,000 documents, and prepared detailed privilege logs and supplemental privilege logs for 2,371 documents withheld. (ECF No. 14 at 28.) They argue this discovery has imposed serious hardship on respondents, in contrast to petitioner which is a $490 million company. However, respondents have a financial interest in any recovery Nextpulse obtains in the underlying litigation, and Nextpulse has agreed to indemnify respondents to cover all of respondents' costs or expenses related to this litigation. (ECF No. 14 at 11-12.) Further, respondents have not demonstrated that the documents can be obtained from another party. Accordingly, any burden on the respondents is outweighed by the relevance of the documents and petitioner's need.

### G. Confidentiality Order

Petitioner argues that the confidentiality order adequately protects respondents' confidentiality concerns. (ECF No. 14 at 16.) The confidentiality order has a "Highly Confidential-Attorneys' Eyes Only" provision that covers trade secret information and "research, technical, commercial or financial information that the party has maintained as confidential." (ECF No. 14-1 at 603-04.) It also has a section covering subpoenas. (*Id.* at 612-13.) Respondents argue that they are concerned that the confidentiality order is not adequate to protect their information, especially from a competitor. (ECF No. 14 at 32-34.) However, a "protective order allowing 'confidential' or 'highly confidential' designations is sufficient to protect a nonparty's trade secrets." *AFMS LLC v. United Parcel Serv. Co.*, 2012 WL 3112000, at *7 (S.D. Cal. July 30, 2012) (quoting *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 603 (N.D. Cal. 2009)). There is also an attorneys' eyes-only provision included in the confidentiality order that would prevent Life Fitness from viewing the documents designated as such. Accordingly, any documents produced that are confidential or trade secrets should be adequately protected by the confidentiality order.

14

### IV. Conclusion

In accordance with the above, IT IS ORDERED as follows:

1. Petitioner Life Fitness's motion to enforce subpoenas (ECF No. 1) GRANTED; and

    a. Documents shall be produced subject to the protective order in place within 21 days of the date of this order.

Dated:  February 7, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

5, life.0494.24